DELAWARE, L. & W. R. CO. v. CENTRAL R. CO. OF NEW JERSEY et al.

(Circuit Court of Appeals, Second Circuit. November 14, 1916.)

No. 33.

COLLISION ⬡═95(7)—STEAM VESSELS CROSSING—MUTUAL FAULTS—FAILURE TO KEEP PROPER LOOKOUTS.

A collision on the Hudson river in the daytime between a ferryboat passing up and a car float alongside a tug coming down on slightly crossing courses *held* due to faults on the part of both vessels; the ferryboat being in fault for not observing the starboard hand crossing rule, and

⬡═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

both for failing to keep proper lookouts, it being admitted that they did not discover each other until they were within 300 to 400 feet, and it appearing that with an efficient lookout they should have done so much sooner, although for a part of the time as they approached there was another vessel intervening.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. &#x2297;&#x21DB;95(7).]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Delaware, Lackawanna & Western Railroad Company, owner of the ferryboat Ithaca, against the Central Railroad Company of New Jersey, owner of the ferryboat Goshen, and the Erie Railroad Company, owner of the tug Roselle. Decree for respondents, and libelant appeals. Modified.

A. J. McMahon, of New York City, for appellant.

James J. Macklin, of New York City, for appellee Central R. Co. of New Jersey.

Herbert Green, of New York City, for appellee Erie R. Co.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. March 17, 1914, about 5 p. m., on a clear day, in the middle of the North River occupied by the usual traffic, the ferryboat Goshen, belonging to the Erie Railroad Company, while going up, passed between the ferryboat Ithaca, belonging to the Delaware, Lackawanna & Western Railroad Company, also going up, and a car float in tow of the tug Roselle, belonging to the Central Railroad Company of New Jersey, coming down. The starboard corner of the float struck the starboard side of the Ithaca, doing damage to the boat and causing the death of three passengers and personal injuries to nine others. It is admitted that those on the Goshen did not discover the Roselle and her tow until they were within 600 feet, and that the Roselle and the Ithaca did not discover each other until they were within 300 to 400 feet. A more inexcusable collision or a more deficient lookout has not often been presented to this court.

The libelant charges both the Goshen and the Roselle with fault for not exchanging signals. But if these vessels were in a situation with reference to each other which called for signals under the rules, such signals were for their own guidance respectively, and not for that of other vessels, such as the Ithaca, and as they passed clear the violation of the rule was harmless. Therefore we think the District Judge properly exonerated the Goshen and the Roselle as to this charge.

Out of the very conflicting testimony the District Judge adopted the story of the Roselle, viz., that the Goshen and the Ithaca were approaching on courses slightly crossing the Roselle's, and were therefore, under the starboard hand rule, bound to keep out of the way, while the Roselle was bound to hold her course and speed. We will follow him in this also, and agree that the Ithaca was properly held in fault, which, indeed, is not denied. But he exonerated the Roselle on the ground that the Ithaca was blanketed by the Goshen, and that

when the Goshen starboarded to cross her bow for New Jersey, the Ithaca ported so as to head toward New York, but upon discovering the Roselle and her tow suddenly starboarded to New Jersey, and so threw her starboard side into contact with the starboard corner of the float. Under these circumstances the District Judge thought the Roselle was not at fault because she held her course and speed, which is what the rule required her to do.

We cannot believe that, in the very short time and space which all the witnesses agree existed between the time the vessels discovered and collided with each other, the Ithaca made any such swing, or that, if she were on a clearing course to New York, she would have deliberately changed it to a course toward New Jersey, which made collision inevitable. However, whether that be so or not, we think the Roselle was also at fault for not seeing the Ithaca in time to take steps which might have prevented the collision by warning the Ithaca or otherwise. When the approaching vessels started from their slips they were a nautical mile or more apart. It is most unlikely that the Goshen, whose slip was 1,500 feet north of the Ithaca's slip, could have completely blanketed her from the Roselle on the whole course. Certainly the Ithaca's smokestack and four flag poles were plainly visible to those on the Roselle, and it is difficult to see how they could have watched the Goshen without also seeing them. At all events, a navigator may not blindfold his eyes, and then say, after collision, that although he did not see her at all, the fault under the rules was with the other vessel. The fundamental rule of the admiralty is that a vigilant lookout must be kept on all vessels, so that collision may be prevented even with those which are violating the rules. This is emphasized by article 29 of the Inland Regulations (U. S. Comp. St. 1913, § 7903), applicable to this collision, which provides:

"No Vessel under Any Circumstances to Neglect Proper Precautions.

"Art. 29. Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case."

Who can say that this negligence on the part of the Roselle did not contribute to the collision? There is no obligation in navigation that this court is more disposed to enforce than the duty of keeping a proper lookout.

The decree is therefore modified, by directing the court below to enter the usual decree against the Delaware, Lackawanna & Western Railroad Company and the Central Railroad Company of New Jersey for half damages, with interest and costs.